THE PEOPLE, *on the relation* of the Commercial Insurance Company of the City of New-York, *vs.* THE SUPERVISORS OF THE CITY AND COUNTY OF NEW-YORK.

Moneyed or stock corporations, deriving an income or profit from their capital, *are liable to taxation*, although the *income* be not equal to the *expenditures* of such companies for the twelve months preceding the taxation.

THIS is a motion for a peremptory mandamus against the board of supervisors of the city and county of New-York, to compel them to strike from the tax list for the year 1835, and from the warrant of the collector, the name of the Commercial Insurance Company.

It appears from the return of the board to the alternative mandamus, that the president of the company filed with the clerk of the board an affidavit stating that they were not in the receipt of *any profits or income*, nor had they received any for the then last twelve months, and that during that period, as well as at the time of making the affidavit, the property of the company was not equal to the amount of capital stock paid in. This affidavit was presented to the board of supervisors at their annual meeting in 1835, in order that the name of the company might be stricken from the assessment roll, and no tax imposed. The application was denied, and the company assessed $1320.

[606]     *By the Court*, NELSON, J. The statute, 1 *R. S.* 416, § 9, provides that if the president or other proper officer of any incorporated company named in the assessment roll, shall show to the satisfaction of the board of supervisors, at their annual meeting, within two days from the commencement thereof, by an affidavit of such officer to be filed with the clerk of the board, that such company is not in the receipt of any *profits or income*, the name of such company shall be stricken out of the assessment roll, and no tax shall be imposed upon it. Though the affidavit shows a state of facts *literally* corresponding with the terms of this section, it was conceded on the argument that the company had been in operation the preceding year, and was so at the time of the application to the board; and that the affidavit was made under the advice and belief that by the term *profits or income*, the statute intended *net profit and income*. The president did not mean to swear that the company had not been for the year, and was not at the time, in receipt of *any income ;* in other words that it was not in operation. The question then presented before the board, upon the affidavit, involved the true construction of this section : whether, by the terms "any profit or income," the legislature intended *net profits and income*, or not.

The first act on this subject was passed 23d April, 1823. (*Statutes, session of* 1823, *p.* 390.) The 14th §, (*p.* 395,) provides, that all incorporated companies, *receiving a regular income* from the employment of capital, shall be considered persons, within the meaning of this act, and assessed accordingly. The section then goes on and prescribes the mode of levying and collecting the tax upon the real and personal estate of the companies. The next (and section 15) gives to the companies their election to pay ten per cent. upon all "*dividends, profits, or income*" made in lieu of the tax before directed. This act was amended 20th April, 1825. The 7th section provided for the payment of the tax by the proper officer of the company, and for a deduction to the amount from the dividends of the stockholders ; it also provided that any turnpike or bridge company, any canal company, or company employed wholly or principally in manufacturing, might elect to pay five per cent. upon all "the [607] *profits or income*" made by them ; but that no such company, whose "*net income or profits*" exceeded five per cent. on the capital stock paid in, &c., should have this privilege. The 15th section of the act of 1823 was repealed, which of course limited the privilege of commutation to the companies above specified. The first section of the revised act, (2 *R. S.* 414,) provides that " all moneyed or stock corporations deriving an *income* or *profit* from their capital, shall be

liable to taxation on their capital." The 11th section gives the privilege to all companies employed wholly or principally in manufacturing, and all marine insurance companies, whose *net annual income* shall not exceed five per cent. on the capital stock paid in, &c., to commute for their taxes by paying five per cent. upon such *net income* made during the year.   Section 12th exempts from taxation all turnpike, bridge, or canal companies whose *net annual income* shall not exceed five per cent. on the capital stock, &c.   Section 13th prescribes the mode of ascertaining whether the net annual income exceeds or falls short of the five per cent.   The proper officer shall make an affidavit stating the capital stock paid in and secured to be paid in, together with the *income and profits*, and the *total expenditures during the preceding year,' &c.*   And by section 14th, the proper officers of each company electing to commute, must also make an affidavit stating the amount of such *net income*, &c.

It is apparent, from the various provisions above referred to, that the legislature, in using the phrase, ": any profits or income," did not intend to convey the same idea as that indicated by the words " net income."   Whenever the assessment of the tax is made to depend upon the clear profit arising from the employment of the capital of the corporation, the phrase " net annual income" is used. (See 1 *R. S.* 416, 417, § 11, 12, 14.)   A very striking illustration of the meaning of the legislature may be found in the 13th section, (*p.* 417,) which prescribes the mode of ascertaining net annual income.   It directs the " *income and profits*" and the total expenditures of the company for the year to be stated in the affidavit, which is to be delivered to the assessors.   By these data the asses-   [608] sors can readily ascertain the net income or profits.

In all the discussions of the assessment law, we are not aware that the principle was ever advanced or defended, that taxation of capital should depend upon the question whether it had been profitably employed or not.   Certainly no such rule has ever been applied in the assessment of individual property.   The injustice of it is apparent.   It would be taxing the skill and industry used in the employment of the capital, rather than the capital itself.

The comptroller, in a letter of instructions to the several boards of supervisors, 23d September, 1826, expresses the view above taken of the statutes of 1823, 1825, and there has been no change by the Revised Statutes upon the point in question.   He says : " It is the duty of the assessors to put on the assessment roll not only every company deriving a profit from its business, but every company deriving an income, even if this income is much less than its expenses."

The preliminary objections taken to this proceeding, namely, that the court could not interfere in this summary way, consistent with the exercise of the discretion of the board, under the 1st section above cited, or require them to do an act which seems not to be within their power, would probably have been sufficient to deny the motion ; but we have looked into the merits at the request of the counsel, and put the case upon that ground.